Would the attorneys who are going to argue the case approach the bench please identify yourselves and the party you represent and indicate to the court how much time you would like to argue your position. Remember the microphone is for recording purposes only. It's not for amplification. So if you want to be heard by the masses out in the back of the courtroom you're going to have to speak up. Thank you your honor. My name is Karen Weiberg. I'm here on behalf of Ty Juan Turner and I would anticipate a request possibly 10 minutes for opening and 5 minutes for rebuttal. Very well. Katherine A. Sherrill on behalf of the people of the state of Illinois and I'll just use the microphone a lot of the time. Very well. Mr. Weiberg. Pardon me. May it please the court. Counsel. Your honors, the circuit court erred when it dismissed Ty Juan Turner's post conviction petition. That petition stated a meritorious claim that he was subjected to an illegal consecutive sentence. And although that claim was subject to objections for both timeliness and forfeiture, at the time it was filed and as the state concedes, the void sentence rule was sufficient to overcome both of those objections. Now as your honors are obviously well aware, the law has changed and the void sentence rule no longer exists. It has been abolished and under People v. Price, that abolition has been rendered retroactive to affect petitioners like Mr. Turner. So Mr. Turner cannot rely on the void sentence rule here in this court and he's not seeking to. And your honors, I want to be clear. Mr. Turner is not asking this court to grant him the relief he requested in his petition. He's not asking this court to advance his petition further in the post conviction process. He's not asking to be excused from showing a lack of culpable negligence or from making a claim to overcome forfeiture. So just so we understand exactly what he is asking for, I think you were pretty clear. But is he asking for us to remand so that he can present to the trial court an amended petition and ask that court for leave? Because he hasn't made a showing of the Loyola factors at this point to us. You're just asking for him to have the opportunity to make that showing to the trial court? Yes, your honor, to have the opportunity to either make that showing or given that circumstances have changed, if he cannot, to withdraw his petition pursuant to Shultz, Frum, and Pearson. Well, that's a different issue because he's already had one claim on that petition decided on the merits that he didn't appeal. So he's filed a first petition. He has, your honor, although respectfully to that point, I would note that, A, all of the claims that Mr. Turner filed there were all directed towards his consecutive sentence. And also, from the perspective of the concerns that Shultz, Frum, and Pearson addressed, which had to do with the fact that a petitioner is suddenly facing requirements that they didn't know they were facing before, and a petitioner is thereby, their decision on what to do changes then. One of the things they note in Shultz, Frum, is that you might want to simply withdraw your petition, knowing that you are now going to be subject to these other requirements. It's just not meritorious. It's just no point. Is that what you're saying? I mean, well, wait. If he, as a trial court. I guess what I'm saying is, fine, he can withdraw his petition, but he will have filed the first petition. Well, your honor, on that point, again, I think if we follow Shultz, Frum, what we find is that it doesn't necessarily fall that way, because we're returning to a pre-dismissal position here. And the whole idea is that at the time he filed this petition, he had a meritorious claim. Now, once he files that claim, then no matter what he does, whatever happens, as long as he's filed that meritorious claim, anything else that he files thereafter in a post-conviction petition would be subject to the cause and prevention rule. So if you believe that you have a meritorious claim, you have a claim that's going to bring you relief, the only thing to do at that point is to simply raise every claim you can think of, because no matter what the consequence, it's going to be the same. Now, knowing now that the law has changed, knowing now that what he thought was a meritorious claim, he may be able to address timeliness. He may be able to address – well, we have good reason to think he could address forfeiture, but he may be able to address timeliness. Just give me a clue. How do you think he might do that? It's hard to be certain. I wouldn't want to speculate too far, but I would note – I mean, I have heard prisoners, for example, refer to mistakes in the paperwork they were given by DOC that suggested that their outdate was actually earlier than it was, and then one day it changes, and they go, wait a minute, I didn't realize this. Now, I'm not – you don't have to commit, and we don't have to rule out it. Yeah. We all agree it's a tough show. It is a tough show, and although I would note not nearly as difficult as causing prejudice. Probably true. And in particular because, of course, when you're dealing with timeliness or forfeiture, on an initial petition, at the point that comes up, you've been appointed counsel. That's not a grounds for summary dismissal at the first stage. Whereas causing prejudice is a threshold showing. So not only is it a more difficult showing to make, but it's a showing that you have to make without the assistance of an attorney. Whereas, again, had Mr. Turner been aware of the requirements that his petition would ultimately be subjected to when he filed it, he might have made a different choice, knowing – understanding both the potential consequences and understanding the possibly changed merits of his claim. Now, Your Honors, as we've already started to address a little bit here, Mr. Turner really is, in any relevant respect, similarly situated to the petitioners in both Shellstrom and Pearson. At Shellstrom and Pearson, of course, we're dealing with the separate question of, you know, when a circuit court recharacterizes a petitioner's petition as a filing under the Post-Conviction Hearing Act. However, the Supreme Court, in addressing that, they recognized that that was a valuable thing. It was a useful thing for the circuit court to do. But it puts a petitioner in a very difficult position. And it's the same position that Mr. Turner finds himself in now, which is to say all of a sudden the petitioner finds that their petition is being judged based on requirements that they were never aware of and couldn't have been aware of at the time that they filed their petition. In Shellstrom and Pearson, they didn't file under the Post-Conviction Hearing Act, so they would not have anticipated having to meet those requirements. And similarly, Mr. Turner, at the time he filed, was relying very explicitly and very heavily on the void sentence rule, which at the time had, you know, I think at least 20 years of more or less unbroken precedent supporting it. So it seemed like a reasonable thing to rely upon. And just like the petitioners in Shellstrom or Pearson, that has now changed. Instead of the circuit court changing the rules that it's being governed by, in this case, the Illinois Supreme Court has. The abolition of the void sentence rule, which happened after this case was not only, after the petition was not only filed, but after it was dismissed, that the abolition of the void sentence rule and then the later retroactive application of that changed the landscape as far as a claim like this is concerned. And the second thing that the court was concerned with in Shellstrom and Pearson, and that is again very similar to this case, was the consequences of having a post-conviction petition dismissed, specifically, as we've discussed, the cause and prejudice test. And the Supreme Court noted in Shellstrom that this is a, this is not a small matter. This is not a small obstacle that the petitioner must now face. They are faced with a much bigger hurdle, and a hurdle that at the time they filed, in that case because they did not know they were filing a post-conviction petition, and in Mr. Turner's case because he did not know that his then meritorious claim could potentially become non-meritorious as a result of a change in law, they couldn't anticipate that outcome and they couldn't make an informed decision about whether that was something that they would then actually do if they knew what they were, what they were facing. And so, Your Honors, that's why we're really, we're asking this court to apply, just as the situation is very similar, to apply the same remedy and simply give Mr. Turner the opportunity. Again, maybe he can show timeliness, maybe he can't, I'm not sure. But he should have the opportunity to either do so or to make the decision that he would have been able to make if he had filed his petition under the law as it is now in the first instance, which is to say he should be able to determine if he still thinks his claim has merit, knowing the law is what it is now, and if it doesn't, then he should be allowed to withdraw it. Do you have any ideas to how many prisoners may be similarly situated? Your Honor, I don't know how many prisoners are similarly situated. What I can say on that point is that I would imagine it's a relatively small number simply due to the fact that anyone who was still pending in the circuit court at the time Castleberry was issued, of course, had the opportunity to amend or has that opportunity now. And certainly, you know, people who have already completed their direct appeal, those cases are done. So it's this small window of petitioners for whom this was a major and important change in law and who were in between the circuit court and having their appeal resolved when this change in law took place. And so we don't know exactly how many petitioners that would be, and I don't know that we ever could. But I think there is. I think you're saying, and I think, I just want to clarify, I think you're right in answer to Justice Harris's question. If this, if Castleberry had come down while this was still pending in the trial court, your assumption is Mr. Turner or Mr. Turner's counsel, who was a second-staging counsel at that point, would have said, oh, this new case has come down, Judge, we want an opportunity to amend our petition, and that would have been routinely granted. That's your assumption as to whether they would withdraw. Or potentially withdraw. Now, that would have presented somewhat, as this case does, a somewhat new issue. It hadn't been dealt with before, except in the context of cases like Shelstrom and Pearson. But, yeah, if you were still in circuit court at that point, I mean, especially having had counsel appointed, reasonable counsel would have made an amendment or would have taken some other action at that point. Because, again, in Mr. Turner's case, unless, and we don't know, unless there are facts out there that address this lack of timeliness, this, it's a game changer. His claim has gone from good to bad. And speaking of Mr. Turner again, am I correct that he's scheduled to get out of prison in this summer? Yes, Your Honor. We expect Mr. Turner to be released probably in the next month, a month and a half. And I would, on that point, I would like to address, this does not create a mootness problem in this case. First, because, of course, once he's released, he will have to serve three years in mandatory supervised release. Now, just as far as his sentencing claim here is concerned, by statute, if at any point he's found to have violated mandatory supervised release during that three years, he can be yanked back into the Department of Corrections and not just made to serve the remainder of his MSR term, but to serve up to a year of his prior prison term that had been satisfied by sentence credit. Therefore, he could still end up serving some portion of this illegal consecutive sentence. And also, Your Honor, it bears in mind that the prejudice for Mr. Turner in many respects, yes, Mr. Turner in many respects runs deeper than that because in order for him to file any other post-conviction claim, as long as this dismissal remains and things stay as they are, he would be subject to the cause and prejudice test. And I don't know if Mr. Turner will discover a claim somewhere along the line here that could impact his convictions themselves and not just his sentence. It's possible that he could. And if he did, he would have to address things like timeliness. He would have to address things like forfeiture. But he should not then have to also meet the strenuous standards for cause and prejudice, where, again, what he filed was a meritorious petition, and it was the circuit court's error in dismissing that on grounds that I don't believe anyone has contested were erroneous that has put us in this position. At the time, right, of course, yes. Obviously, today. And I'm sorry, why do you think it doesn't matter that he had this other apprentice claim that has nothing to do with the change in the law that did get ruled on? Well, you know, the reason it doesn't matter is because once he's filing that consecutive sentence claim, the claim that we're talking about here, he has a meritorious claim, he thinks this is going to bring him relief. Once he files that, then anything that happens thereafter is subject to cause and prejudice anyway, which means he will add additional claims, he will add tenuous claims, he'll add almost anything he can think of. It's the rational thing to do if you're a petitioner in that circumstance because you only get one initial petition. And so you should pitch every argument you've got. Now, had he known at the time he was filing this petition in the first place that all he had were those apprendee claims, which quite frankly were contradicted by the law at the time and were unlikely to succeed, he might very well have chosen not to file that petition. At the very least, he should have the opportunity to make that decision informed about what the actual requirements he's facing are. So you're saying he should have a chance to re-evaluate his apprendee claims in light of the change in the law as to his other claims? I don't know if it's about re-evaluating the apprendee claims themselves. I think he should have the opportunity to re-evaluate whether he wishes to file a petition, which he might not have done if he didn't have a meritorious claim that he knew he was raised. I understand, Your Honor. So, Your Honors, if there are no further questions, in closing we would just ask that this Court reverse Mr. Turner's, the order dismissing Mr. Turner's petition and remand so that he can amend his petition if he is able or withdraw his petition if he cannot. Thank you. Very good. We'll save you some time for rebuttal.  Ms. Sherrill? Good afternoon, Your Honors. Counsel, I'm Kathleen Sherrill on behalf of the people of the State of Illinois. May it please the Court. Your Honors, this whole case is about applying the law as determined by the Illinois Supreme Court to a post-conviction petition that did not satisfy the statutory procedural requirements of the Post-Conviction Act. Defendant concedes two things. One, that his ineffective assistance of direct appellate counsel claim was not in his petition. And two, the petition was filed over ten and a half years past the statutory filing deadline. Defendant, however, wants this Court to not follow the Illinois Supreme Court precedent with respect to his failure to satisfy these procedural requirements. He says he acknowledges he needs to satisfy both the tardiness and the timeliness and the forfeiture arguments. He acknowledges that. He just wants an opportunity to try. That's what he's saying. Yes. But the Illinois Supreme Court has spoken very clearly on this scenario already in Paper v. Jones. In Jones, the defendant did not raise an improper admonishment claim in his petition. Instead, he raised it for the first time on appeal. The Supreme Court held that, one, the Post-Conviction Act required the claim to be included in the petition in the first instance. And, two, the appellate court could not excuse a procedural bar because it was not a court of original jurisdiction and it had no supervisory authority to do so. The Illinois Supreme Court in Paper v. Castleberry reversed Paper v. INA and held that defendants can no longer enroll in these procedural requirements and bars based on INA's void sentence rule. The Illinois Supreme Court took up the issue again in Paper v. Price, reversed the appellate court's decision to excuse an untimely procedural bar and held, as a matter of law, that Castleberry applies retroactively to all collateral relief in cutting off all INA collateral claims because INA incorrectly interpreted our Constitution. Thus, the Illinois Supreme Court reaffirmed the holding in Jones that the appellate court cannot excuse procedural bars even though Castleberry had changed the law by eradicating INA's void sentence rule from Illinois jurisprudence and thereby affecting all defendants in a similar situation as this defendant. And this is exactly... It's sort of a catch-22, isn't it? We're going to give you all these opportunities, but if we later decide that some other requirement is required, all those opportunities you thought we gave you are gone because you didn't anticipate what we did years later. Yes. How does that fit in? Well, there is an equitable remedy that the Supreme Court has provided, and that's also in the decision in Jones. And it's the filing of a successive petition. And the filing of a successive petition... Don't you think Price kind of says that the check that the law changed is not going to be enough for cause or prejudice? Don't you think that's what Price says? No, I don't think Price says that at all. Okay, so you think the fact that the law changed is going to give him cause and prejudice or cause? Perhaps, yes. Perhaps? Very likely. Castle Bay could be grounds for cause. So the cause and prejudice test here isn't as onerous as defendant would have this court believe. And the defendant in Price is in the same position. Well, if the change of the law was enough to be cause, it seems to me that Price would have come out differently. No, Price just says that post-conviction procedural requirements cannot be excused. It doesn't say that a change in the law, like the one Castle Bay wrote, cannot be cause. What Price said is that it would not recharacterize the defendant's petition as a successive post-conviction petition on appeal. So the defendant in Price, just like the defendant here, is free to file a successive petition. And in Jones, the Supreme Court said that is absolutely the sole exception to the procedural requirements of the Post-Conviction Act. And that's what we have here. Your Honor, this defendant wants this court to fashion a unique equitable remedy for him. He wants you to let him go back in time and file an original petition as if none of these procedural bars exist in this case. But this court... I don't think he's saying that. He's saying, give me a chance to go back and address the perceived timeliness issue, for example. Because at the time I filed this, that didn't bar me from pursuing my ultimate claim of the consecutive sentence being improper. Because ARDA allowed me to do that, so I didn't have to worry about that. But post-conviction petitions always, as the defendant put it himself, pitch every claim you have, or you're procedurally barred from raising it. You know, he pitched every claim he had. He just didn't... He just... He pitched his claim. His claim is, his sentence is illegal, which you don't really dispute, right? Oh, yes, we absolutely do dispute that. What is the reason? What's your argument? Your Honor, we've never conceded that as to... And where is it in your brief? Well, we've never addressed the merits of the underlying claim because we were standing by the Illinois Supreme Court opinions in Jones and Price, which have held that this court cannot excuse any of the procedural... Let me just stay with you for a second. If we were to rule that... And I'm not saying we would, but if we were to rule that a change in the law equals cause, that would have a lot more ramifications for a lot more people than the ruling that the defendant's asking for here, wouldn't it? That would suggest any change in the law would create cause, and I'm not sure that's what we want. Your Honor, whether that is cause or not is not an issue before this Court at this point in time. But you throw that out to us as bait to go along with your position. You're telling us basically, don't worry about the cause of prejudice concern that the defendant has down the road because the change promulgated by Castleberry is cause. Could very well be cause. And I assure you that your office will be in this courtroom arguing it is not cause. Cause is an objective factor that prevented the defendant through no fault of his own to not raise a claim. The defendant always was required under the Act to raise his ineffective assistance of direct apparent counsel claim. There's nothing in the Act that says he could raise it at any different time. That alternative claim was always available to him. He just simply chose not to raise it. It wasn't necessary because the only reason it's necessary is to overcome forfeiture. It's necessary to raise every claim that you have, even in the alternative. It's required by the Act, and it's required by Supreme Court case law. I guess what I'm saying is it's not really a claim here. It's his response to forfeiture. His ineffective assistance of appellate counsel is his response to your argument that he's forfeited his illegal sentences. It's not an independent claim. Which he did. He did forfeit the consecutive sentencing claim. First, he never challenged it in the trial court or on direct appeal. So the real claim that he had was the ineffective assistance. Potential claim that he had was ineffective assistance of direct appellate counsel for failing to raise that claim. To raise the claim that trial counsel is ineffective with respect to the sentence. To be clear, the Supreme Court has said in Jones and Price that the appellate court has no authority to fashion any unique equitable remedy for defendants whose claims are procedurally barred. The appellate court cannot excuse procedural bars in the Post-Conviction Act. The Jones court has also said that there is an equitable solution for defendants in this instant defendant's position, and that is the filing of a successive petition. And that is the sole, that's a quote from Jones, sole exception to the bars in the Post-Conviction Act. In fact, they even gave a roadmap to appellate counsel, post-conviction appellate counsel, and they said when post-conviction appellate counsel finds that there's a claim, a potentially meritorious claim that was not raised in the pro se petition, the right course of action is to file a successive petition, not to take an appeal and to try to ask this court to fashion a unique equitable remedy. And with respect to the merits of the underlying consecutive sentencing claim, it's far from a foregone conclusion that there's any validity, that there's any invalidity with respect to that sentence. The sentence is not void percassibly, and the reason I'm addressing it is because the defendant has incorrectly asserted in his reply that we conceded it, we've done nothing of the kind. There's Illinois Supreme Court authority supporting the validity of that sentence in this case. To support defendant's claim that it's invalid, he relies on cases that involve graze wounds to the victims. In this case, however, the victim's injury was not a graze wound. Here, the victim was actually shot in the calf, and the bullet entered his body, which caused him to limp and to seek medical attention. That injury is qualitatively different than the graze wounds involved in the case said by the defendant. In fact, the case that the defendant relies on distinguishes the graze wound suffered by the victim in that case from the bullet wound suffered by a victim in the case of the Supreme Court case of People v. Johnson, 149A2-118. Similar to the injury in this case, in Johnson, the bullet entered the victim's shoulder, but he was still able to walk away, and he sought medical attention on his own. The Illinois Supreme Court in Johnson upheld the consecutive sentence, even though the trial court did not make a specific finding of severe body injury. So even on the merits, the invalidity of the consecutive sentence is far from a foregone conclusion. And, again, to reiterate, we never conceded it. We just relied on the clear state of law pronounced by the Illinois Supreme Court in Johns and Press, which bailed us, quote, from excusing procedural bias in this case and reaching the substance of the consecutive sentence claim. Johns didn't have anything to do with a change in the law like we have here. There was no change in the law at issue. In Johns, there was simply a failure to allege things that got him around the procedural bias, correct? Yes. But in Johns, the court spoke to this court's authority and power to excuse procedural bias and said this court has no power, no supervisory authority to do so. So a change in the law has no bearing on this court's power or authority to excuse procedural bias. Right. But I guess I'm back to that's not what he's asking us to do. Is there a procedural bar to us remanding the case? Yes, there is. And what is that? That would be excusing the procedural bar that exists in this case. If you remand it, you're doing something with it. You're considering, see that's a clever way of avoiding the rule of law that you can't raise a claim on appeal. It's just an end run around Johns and Price. He's still trying to end run the untimeliness and the fact that he didn't raise a claim in this petition. And Johns and Price say that this court cannot excuse these bars and allow defendants to end run those procedural bars. Isn't his claim that he was improperly sentenced to a consecutive sentence? That's his underlying claim, but that claim is forfeited. I'm sorry, that's what? That was his underlying claim in his petition. That's his claim. But that claim is forfeited. I mean, that claim, he didn't object at trial. He didn't object on direct appeal. So that claim is not viable. It's not viable. The only viable claim he potentially might have had was ineffective assistance of direct appellate counsel for failing to raise trial counsel's ineffectiveness, for failing to object to that sentence. So if defendant wants an opportunity for his claim to be heard, John, he has to permit it in a successive petition. For these reasons and those stated in the briefs, unless this court has any more questions. Justice Harris asked about the impact of a favorable ruling for this defendant. How many potential cases would you estimate this may apply to? We all appreciate that as a possible guess, but is this something that you could foresee being a frequent issue? Only if this court chooses to not follow Supreme Court precedent could this court fashion some sort of unique equitable remedy other than the filing of a successive petition. What would that be? Tell us. Tell us what would it be like. Well, I'm sorry? What kind of equitable remedy? Tell us. The defendant wants this court to let him, to remand it and to place him in the position that he was in filing an original petition and ignore the untimeliness and the failure to raise the claim in the petition with procedural bars that already exist. But that's not what he's asking. He's saying give me a chance to address timeliness because I didn't address timeliness because I didn't have to because of Erna. And after all this was done, the Supreme Court came down with Castleberry and said not retroactive. So he's saying had I known that, had I been clairvoyant, take a term out of another Supreme Court case, had I been clairvoyant, I would have addressed the timeliness or not. He's just asking for the opportunity to go back, either amend this petition or withdraw it. Justice Harris's question to defense counsel earlier was if that happens, if you were able to do that, would that impact tremendously or minimally such proceedings in the certain court or the appellate court? What's your guess? Probably hundreds. I really have no way of knowing. But it would impact every single defendant that had a post-conviction claim in the pipeline, whether in the child court, in the appellate court, in the Supreme Court, like the defendant in Price who was in the Supreme Court when Erna came out. His collateral Erna claim was cut off in the Supreme Court. So it would affect every single petitioner who's in collateral proceedings from the child court to the appellate court to the Supreme Court. And Price, the Price court said, too bad. No. Price asked for an equitable remedy. Price was on his fourth post-conviction petition, I believe. So even if you'd let him remand, he'd still be in the land of successive post-conviction petitions. So that's different. Not necessarily. Well, Price may be different, but every other first-filing petitioner in the pipeline is in the exact same position. And the Supreme Court has been very clear, no, there's no other equitable remedy. It's a successive petition. That's a fairness exception. And this court has to enforce procedural bars in post-conviction. Every first petitioner in the circuit court, if he or she has a viable claim, has the opportunity to amend the complaint to comply with or amend the petition to comply with the current status of the law. True. Right. So taking that as true, if the defendant in this case was successful, as Justice Harris asked earlier, would the impact of a favorable ruling in this case be chaos or minimum? I think it would be significant. We have a significant amount of post-conviction cases. Don't we know? Yeah. We have quite a bit of post-conviction cases. But the point is that this court is bound by stare decisis. We know that. So you have to enforce the procedural bar that exists, the dual procedural bars that exist in this case. And briefly — Okay. All right. No, no. I want to kind of you up. He's just making sure we don't have any more questions. Oh, okay. Then I'll cut you. No, no, no. Take your time if you have anything else you want to address. Briefly, the comparison to Shellstrom and Pearson is not valid. Price rejected an equitable claim based on Shellstrom and Pearson. This defendant is not in the same position. His petition wasn't recharacterized by an outside force like the trial court. He filed this petition. He knew that he had to — he could be a line learner, but he also had an obligation to raise all other alternative claims and to plead culpable negligence. That's what the Post-Conviction Act says, and that's what the Supreme Court has held. So for these reasons and those stated in it, he still has a remedy. And all he has to do is file a successive petition. So for these reasons and those stated in my brief, Your Honors, the people respectfully request this Court to apply the clear law pronounced by the Supreme Court in this context and affirm the dismissal of the post-conviction petition. Thank you. Mr. Weber, briefly, please. Yes, sir. Your Honors, I'd like to just hit on a couple of things there. First of all, I'd be remiss if I didn't note the Supreme Court in Shellstrom was presented with the very argument that the State is presenting here, that, well, they can file a successive petition. And the Supreme Court's answer in Shellstrom was, we disagree. We do not believe that this is such a small hurdle for a petitioner to overcome. This is a major barrier to having this claim heard. And the Supreme Court on that basis fashioned a remedy that we're asking this Court for here. In regard to People v. Jones, Your Honors, People v. Jones has virtually nothing to do with this case. In People v. Jones, the petitioner filed what even he acknowledged on appeal was an utterly meritless petition. It did not allege sufficient fact. It did not allege sufficient legal claims. It did not allege anything. And then the appellate counsel attempted to save that on appeal. And the Supreme Court said, no, you can't do that. Mr. Turner filed a 100 percent meritorious petition under the laws that existed. And I would like to note, counsel has now decided to present some arguments about the merits of that petition. All of those arguments are forfeited, as I'm sure Your Honors are aware, because we raised that issue in our opening brief. The State did not respond to it in any fashion. That being said, so Jones just doesn't involve even remotely similar circumstances. As for Price, and they say that this was rejected by Price, this was not rejected by Price. Although Price makes a reference to the spirit of Charlestown, what the petitioner in Price asked for was to have his claim recharacterized, considered as having satisfied cause and prejudice, and then have a merits determination made. He wanted to skip the process, and all the Supreme Court said is, we're not going to do that. You would have had to show cause and prejudice if you filed this in the first place. You should have to show cause and prejudice now. Because it was already successful. It was already successful. Well, he actually filed it in 1401. But then he alternatively sought to have it recharacterized after the abolition of the void sentence rule. And Mr. Turner is not asking to be excused from showing anything. Mr. Turner is not asking to be excused from showing a lack of culpable negligence. He's not asking to be excused from showing making a claim to overcome forfeiture. All that he's asking is to have an opportunity to do those things. And this Court isn't being asked to excuse any procedural bars, nor is this Court being asked to violate Supreme Court law. The Supreme Court itself fashioned this remedy in Charlestown and Pearson, and under circumstances which we contend are in virtually every way analogous to the present circumstance. I would just one further comment on the question as to how many people this is going to affect. I would note, to be honest, this does not affect every post-conviction petitioner. This affects that small class of post-conviction petitioners who were pending on appeal when Cassabury changed the law, who raised sentencing claims involving the void sentence rule, and who had not already completed their direct appeal now. So we are talking about a relatively narrow class of people. There are a lot of post-conviction petitions that are out there that have nothing to do with this issue. Thank you. Thank you, Your Honor. On behalf of my panel members, I'd like to thank everybody for their efforts in this regard. Everything was, as usual, excellent. We will take the matter under the Court's standing.